IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 21-MJ-118 (MAU) |
| v. | : | 18 U.S.C. § 111(a) |
| | : | 18 U.S.C. § 113(a)(4) |
| PETER GEOFFREY MOLONEY, | : | |
| Defendant. | : | |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Peter Geoffrey Moloney, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

***The Attack at the U.S. Capitol on January 6, 2021***

1. The United States Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by United States Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted because the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives

and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. This joint session of Congress was an official proceeding. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Richard Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.  As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 p.m., the situation at the Capitol had become a civil disorder and throughout the rest of the afternoon the civil disorder obstructed the USCP's ability to perform their federally protected function to protect the U.S. Capitol building and its occupants.

5.  At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department (MPD) were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter into or remain inside of the building. Prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.  At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP

attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Peter G. Moloney's Participation in the Capitol Riot on January 6, 2021*

8. On January 6, 2021, Peter G. Moloney attended the "Stop the Steal" rally in Washington, D.C., in support of former President Trump. He had traveled from his home in Bayport, New York, to Washington, D.C., and brought with him certain items, including a bicycle helmet, protective eyewear, hard-knuckled gloves, a face mask, and a can of Black Flag® Wasp, Hornet & Yellow Jacket Killer aerosol spray. Mr. Moloney did not wear these items while at the rally.

9. At a certain point in the early afternoon, Mr. Moloney walked east from the rally to the U.S. Capitol. As he approached the Capitol, he put on his helmet, eyewear, gloves, and other protective gear.

10. Mr. Moloney approached the restricted grounds of the U.S. Capitol via the Maryland Walkway. He was part of the first group to enter the restricted grounds from that point, and he was one of the first to line up against the line of U.S. Capitol Police Officers on the West Plaza. As tensions rose, Mr. Moloney pulled the can of Black Flag® Wasp, Hornet & Yellow Jacket Killer aerosol spray from his backpack. At various times throughout the afternoon, he carried the wasp spray in the side pocket of his backpack and the side pocket of his carpenter jeans. Mr. Moloney admits that he used the wasp spray in a manner inconsistent with its labeling, specifically, he used the wasp spray to assault police officers.

11. While on the restricted grounds of the U.S. Capitol, on multiple occasions Mr. Moloney held the can of wasp spray in his hand, aimed it at police officers, and sprayed the officers with it—causing the spray to strike the officers in their hands, arms, bodies, and heads. Some of the officers struck by Mr. Moloney include Metropolitan Police Department Officers J.R., J.B., G.N., and B.S.

12. On two occasions Mr. Moloney assaulted individuals that he believed to be and who were in fact members of the news media, specifically N.Q. and J.M., while on Capitol Grounds. Specifically, Mr. Moloney admits that he walked up behind N.Q. when N.Q.'s back was turned and swung his arm down onto N.Q.'s hand and the camera that N.Q. was holding in his hand. Mr. Moloney then grabbed N.Q.'s camera and yanked back on it in an attempt to pull it out of N.Q.'s hands. This action that caused N.Q. to stumble on the stairs. This assault damaged N.Q.'s camera. The repairs cost $1,047.85.

*Elements of the Offense*

13. The parties agree that 18 U.S.C. § 111(a) Assaulting, Resisting, and Impeding Certain Officers requires the following elements:

    a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, and interfered with officers from the Metropolitan Police Department.

    b. Second, the defendant did such acts forcibly.

    c. Third, the defendant did such acts voluntarily and intentionally.

    d. Fourth, the officers the defendant assaulted, resisted, opposed, impeded, intimidated, and interfered with were assisting officers of the United States who were then engaged in the performance of their official duties.

    e. Fifth, the defendant made physical contact with those officers, and/or the defendant acted with the intent to commit another felony. For purposes of this defendant, "another felony" refers to a violation of 18 U.S.C. § 231(a)(3), Civil Disorder, as described above.

14. The parties agree that 18 U.S.C. § 113(a)(4) Assault by Striking requires the following elements:

    a. First, the defendant assaulted another individual, N.Q., by striking, beating, or wounding him.

    b. Second, that the assault happened within the territorial jurisdiction of the United States, which is in this case the restricted grounds of the United States Capitol.

*Defendant's Acknowledgments*

15. The defendant knowingly and voluntarily admits to all the elements of 18 U.S.C. §§ 111(a) and 113(a)(4) as set forth above. Specifically, Mr. Moloney admits that he voluntarily and intentionally assaulted the officers described in paragraph 11 by spraying them with wasp spray and that he did so because he knew them to be police officers that were then attempting to protect the U.S. Capitol, the proceedings taking place inside, and the individuals involved in those proceedings. Mr. Moloney admits that when he sprayed these officers, he did so with the intent to obstruct and impede the MPD officers that were assisting officers of the United States, USCP

officer, who were then engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder. Mr. Moloney acknowledges that the spray made physical contact with the officers.

16. Mr. Maloney admits that when he assaulted N.Q., he did so by striking him, and that when he did so, both he and the victim were within the territorial jurisdiction of the United States.

                                    Respectfully submitted,

                                    MATTHEW M. GRAVES
                                  United States Attorney
                                  D.C. Bar No. 481052

By:                                         
                                  SEAN P. MURPHY
                                  Assistant United States Attorney
                                  NY Bar No. 5321617
                                  Torre Chardon, Ste 1201
                                  350 Carlos Chardon Avenue
                                  San Juan, PR 00918
                                  787-766-5656
                                  sean.murphy@usdoj.gov

                                  */s/ Victoria A. Sheets*
                                  VICTORIA A. SHEETS
                                  Assistant United States Attorney
                                  NY Bar No. 5548623
                                  601 D Street, N.W.,
                                  Washington, D.C. 20001
                                  (202) 252-7566
                                  victoria.sheets@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Peter G. Moloney, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 5/16/24

Peter G. Moloney
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 5-16-24

Edward Heilig, Esq.
Attorney for Defendant

Philip Branigan, Esq.
Attorney for Defendant